IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ESTATE OF DORLA EVANS BOYLES and PATRICK BOYLES, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | 1:20-CV-276 |
| GREE USA, INC., MJC AMERICA, LTD, GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI, and HONG KONG GREE ELECTRIC APPLIANCE SALES, LTD, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

In May 2017, a fire damaged the home of Patrick Boyles and Dorla Boyles. The alleged culprit was a faulty dehumidifier designed, manufactured, and distributed by the defendants, referred to collectively here as Gree. The plaintiffs move for sanctions and for summary judgment on liability, pointing out that the defendants have offered no evidence in support of several affirmative defenses and asserting that the defendants' answers should be stricken as a sanction for failure to make Rule 30(b)(6) witnesses available. Serious sanctions are appropriate, and the Court will strike the defendants' affirmative defenses and prohibit them from introducing any evidence beyond cross-examination of the plaintiffs' witnesses. The plaintiffs' motion for summary judgment will be granted only to dismiss some of the defendants' affirmative defenses as an alternative basis for some of the sanctions and it will otherwise be denied.

## I. Sanctions

The Court previously entered an order finding that the defendants have violated court orders requiring them to produce Rule 30(b)(6) witnesses, and the Court adopts its findings and conclusions from that order by reference. *See* Doc. 101. The Court held that, at a minimum, the defendants must pay the plaintiffs' reasonable expenses related to the depositions, including attorneys' fees arising from discovery efforts related to the Rule 30(b)(6) depositions and related motions practice, and that the defendants will be prohibited from calling any employee or former employee to testify at trial. *Id.* at 12–13, 17. The Court stated its expectation that it would impose additional appropriate sanctions after further consideration. *Id.* at 18.

As previously explained, Rule 37 of the Federal Rules of Civil Procedure identifies a number of sanctions that might be appropriate, including, as is relevant here: (i) directing that matters embraced in the order or other designated facts be taken as true for purposes of the action; (ii) prohibiting the disobedient party from supporting or opposing certain claims or defenses, or from introducing other matters into evidence; (iii) striking pleadings in whole or in part; (iv) staying proceedings until the order is obeyed; (v) dismissing the action in whole or in part; or (vi) rendering a default judgment against the disobedient party. *See* Fed. R. Civ. P. 37(d)(3) (referring to Rule 37(b)(2)(A)(i)–(vi)). The Fourth Circuit has developed a four-part test for district courts to use when determining appropriate Rule 37 sanctions. *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc). Courts should consider: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance

2

caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would [be] effective." *Id.* (citation omitted).

Having given the matter further consideration in light of its more detailed review of the pleadings, the summary judgment briefing, and other pending motions, the Court finds and concludes that additional sanctions are appropriate. While striking the defendants' answer or entering a default judgment would be too extreme, it is appropriate to strike the defendants' affirmative defenses and to prohibit the defendants from offering any evidence at trial, beyond cross-examining the plaintiffs' witnesses.

As the Court previously held, the defendants acted in bad faith. Doc. 101 at 14–15. They refused to produce these witnesses even though the Court extended the time for several months to allow them additional opportunities to comply. The Court explicitly warned them of the possibility of sanctions, and they still failed to produce witnesses. The defendants eventually stopped communicating with plaintiffs' counsel about the Court's final order that they present witnesses.

The plaintiffs have also been substantially prejudiced by the defendants' non-compliance in connection with the affirmative defenses and challenges to their evidence. *See id.* at 16. A review of the defendants' answers show that each defendant has asserted some thirty-five affirmative defenses, including lack of personal jurisdiction, failure to join necessary parties, statute of limitations, failure to mitigate damages, and contributory negligence. *See, e.g.*, Doc. 20 at pp. 12–17 (MJC); Doc. 21 at pp. 13–18 (Gree Electric); Doc. 22 at pp. 12–18 (Gree USA); Doc. 23 at pp. 12–17 (Hong Kong Gree). The defendants denied key allegations underlying the plaintiffs' claims and as to others they

3

purported to have insufficient knowledge or asserted facts based on information and belief. *See, e.g.*, Doc. 78-17. Their interrogatory answers were not enlightening. *See generally* Doc. 78-17. Yet they have failed to produce Rule 30(b)(6) witnesses who could answer questions about the corporate positions on any of the defenses, about the reasons they have alleged facts on information and belief, and about the facts supporting their denials of liability. This severely hampers the plaintiffs' ability to prepare for trial and raises the specter that the defendants will sandbag the plaintiffs at trial by producing witnesses or evidence they refused to produce during discovery. *See United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C.), *aff'd,* 166 F.R.D. 367 (M.D.N.C. 1996).

The responsibility of a party to sit for a deposition is a key component of the discovery regime established by the Rules of Civil Procedure, and it applies to corporations as well as individuals. *Id.* (holding that the obligation to produce a Rule 30(b)(6) deponent is concomitant to "the privilege of being able to use the corporate form in order to conduct business."). When a defendant fails and refuses to comply with this responsibility, sanctions with enough teeth to deter others from similarly flouting court orders are appropriate.

Striking the defendants' answers or entering a default judgment as to some claims might well be appropriate, but both options seem too extreme here, given that the defendants did provide basic responses to written discovery and otherwise participated in the discovery process and in motions practice. *See Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 504–05 (4th Cir. 1998) (affirming default judgment as sanction where defendant "stonewalled on discovery from the inception,"

4

purported to have insufficient knowledge or asserted facts based on information and belief. *See, e.g.*, Doc. 78-17. Their interrogatory answers were not enlightening. *See generally* Doc. 78-17. Yet they have failed to produce Rule 30(b)(6) witnesses who could answer questions about the corporate positions on any of the defenses, about the reasons they have alleged facts on information and belief, and about the facts supporting their denials of liability. This severely hampers the plaintiffs' ability to prepare for trial and raises the specter that the defendants will sandbag the plaintiffs at trial by producing witnesses or evidence they refused to produce during discovery. *See United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C.), *aff'd,* 166 F.R.D. 367 (M.D.N.C. 1996).

The responsibility of a party to sit for a deposition is a key component of the discovery regime established by the Rules of Civil Procedure, and it applies to corporations as well as individuals. *Id.* (holding that the obligation to produce a Rule 30(b)(6) deponent is concomitant to "the privilege of being able to use the corporate form in order to conduct business."). When a defendant fails and refuses to comply with this responsibility, sanctions with enough teeth to deter others from similarly flouting court orders are appropriate.

Striking the defendants' answers or entering a default judgment as to some claims might well be appropriate, but both options seem too extreme here, given that the defendants did provide basic responses to written discovery and otherwise participated in the discovery process and in motions practice. *See Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 504–05 (4th Cir. 1998) (affirming default judgment as sanction where defendant "stonewalled on discovery from the inception,"

4

missed deadlines "despite adequate warnings from the court," and filed a belated response or no response to court orders); *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) (noting that courts should exercise great caution before imposing the severe sanction of dismissal). While the defendants repeatedly demanded court attention with sequential motions for a protective order, each time promising to try and produce witnesses who ultimately never appeared, they did not engage in the kind of abusive litigation tactics that have supported dismissal and other preclusive sanctions in other cases. *See, e.g., Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 124–25 (4th Cir. 2019) (affirming preclusive sanctions when litigant provided false testimony and withheld evidence). And a default judgment or striking the answers would not be appropriate at all as to the Chapter 75 claim and as to punitive damages.

In its discretion, and after considering a wide range of sanctions, the Court finds that the defendants' bad faith failure to produce Rule 30(b)(6) witnesses warrants the lesser, but still serious, sanctions of precluding the defendants from presenting any evidence and of striking affirmative defenses. These sanctions do not prohibit the defendants from challenging at trial the sufficiency or weight of the plaintiffs' evidence as to any particular cause of action or as to punitive damages, nor does it prevent them from cross-examining the plaintiffs' witnesses or otherwise contesting liability and damages before the factfinder. To the extent the plaintiffs offer deposition testimony, these sanctions do not prohibit the defendants from proffering counter-designations.

These sanctions will protect the plaintiffs from the most likely prejudice that could result from the defendants' violations. The sanctions are serious but not draconian, and

5

they are proportionate to the violations. They are sufficient but not greater than necessary to punish the defendants for their bad faith disregard of court orders and failure to comply with orderly discovery practices.

## II. Summary Judgment

The plaintiffs' principal argument in favor of summary judgment on liability was based largely on the hope that the Court would either strike the defendants' pleadings or enter a default judgment as a sanction for failing to provide Rule 30(b)(6) witnesses.[1] The Court has decided against that approach.

The plaintiffs have otherwise not shown they are entitled to summary judgment on liability. The burden of proof is on the plaintiffs to establish that the defendants have committed the torts and statutory violations alleged in the complaint, but they have only set forth the elements of one of their causes of action and they have not, for any of their claims, identified the specific, authenticated facts existing in the record that would be sufficient to support a jury finding the existence of those elements. *See* LR 56.1(d). To the extent the plaintiffs seek summary judgment on liability, the motion is denied.

The Court has already ruled that the defendants' affirmative defenses should be stricken as a sanction for violating court orders. As an alternative basis for dismissal for some of the defenses, the Court will grant summary judgment on the three affirmative defenses the plaintiffs specifically addressed in their briefing: the 23rd affirmative

---

[1] At times, the briefing reads as a supplement to the plaintiffs' sanctions motion. *See, e.g.,* Doc. 84 at 15 ("The Court should strike defendants' Answer or otherwise default defendants or issue severe evidentiary sanctions such that plaintiffs' case is unopposed and summary judgment is proper.").

defense (compliance with government standards); the 25th affirmative defense (learned intermediary); and the 13th and 15th affirmative defenses (contributory negligence and product misuse). *See* Docs. 20–23 (answers to the complaint for each defendant with identical affirmative defenses). As to these affirmative defenses, the plaintiffs have shown there are no disputed questions of material fact. *See* Doc. 84 at 10–12.

The learned intermediary defense borders on the ridiculous. In response to the plaintiffs' interrogatory about this defense, the defendants provided no information or explanation. Doc. 78-17 at p. 5 (answering Interrog. 9). The plaintiffs' evidence is that Mr. Boyles is a retired antique store owner, Doc. 83-5 at ¶ 4, and there is no evidence that Mrs. Boyles, an elderly woman, *id.* at ¶ 7, had any expertise sufficient to qualify her as a learned intermediary. The defendants do not address this defense in their briefing, much less point to any law or evidence to support it. *See generally* Doc. 95.

It is unclear why the defendants asserted a defense based on compliance with governmental standards. In response to the plaintiffs' discovery request, they asserted that they were "unaware of any applicable governmental standards." Doc. 78-17 at p. 5 (answering Interrog. 8). The defendants do not address this defense in their briefing, much less point to any law or evidence to support it. *See* Doc. 95.

Finally, the defendants assert contributory negligence based on the supposed use of an extension cord to operate the dehumidifier. *See, e.g.*, Doc. 78-17 at p. 4 (answering interrogatories 1 and 3 with conclusory assertions based on information and belief that the plaintiffs used an extension cord). But they have offered no proof that either plaintiff used an extension cord, and Mr. Boyles has testified that he did not need to use an

7

extension cord to operate the dehumidifier. Doc. 83-5 at ¶ 12. Moreover, the defendants have not presented any evidence that a homeowner's use of an extension cord was negligent, could constitute misuse, or might have caused the fire. *See* Doc. 95-3 at p. 6 (expert report stating only that use of an extension cord "can result in overstress or damage to the subject equipment.").

The defendants seek to avoid summary judgment on the contributory negligence defenses by contending that the plaintiffs spoliated the fire scene before the defendants had an opportunity to inspect it in its original state. Doc. 95 at 13. But they did not mention spoliation in response to interrogatories, and they have not shown that the plaintiffs had anything to do with the removal of items from the scene; indeed, the defendants' expert says he understands the items were removed by a third party, Doc. 95-2 at 5 (asserting items were removed by "Safe Labs"), and those items were later made available for inspection in any event. Doc. 95-3 at 4 (noting inspection of artifacts recovered by Safe Labs). And, as stated, there is no evidence that use of an extension cord was negligent or could cause a fire like the one at the plaintiffs' home.

The plaintiffs are entitled to summary judgment dismissing the defendants' 23rd affirmative defense (compliance with government standards); the 25th affirmative defense (learned intermediary); and the 13th and 15th affirmative defenses (contributory negligence and product misuse).

### III. Conclusion

As contemplated by the Court's earlier order imposing sanctions, and in light of further review of the summary judgment briefing and the entire record, additional

8

Case 1:20-cv-00276-CCE-JLW   Document 110   Filed 08/12/21   Page 8 of 9

sanctions against the defendants are appropriate. *See* Doc. 101 at 18–19. The defendants will be prohibited from presenting any evidence beyond cross-examination of the plaintiffs' witnesses at trial and all of the defendants' affirmative defenses will be stricken.

As an alternative basis for dismissal, the plaintiffs' motion for summary judgment will be granted as to the defendants' 23rd affirmative defense (compliance with government standards); the 25th affirmative defense (learned intermediary); and the 13th and 15th affirmative defenses (contributory negligence and product misuse). The plaintiff's motion for summary judgment will otherwise be denied.

It is **ORDERED** that:

1. The plaintiffs' motion for sanctions is **GRANTED** and in addition to sanctions previously imposed, the defendants are **PROHIBITED** from presenting any evidence at trial beyond cross-examination of the plaintiffs' witnesses and all of the defendants' affirmative defenses are **STRICKEN**.

2. The plaintiffs' motion for summary judgment, Doc. 83, is **GRANTED** as to the defendants' 23rd affirmative defense (compliance with government standards); the 25th affirmative defense (learned intermediary); 13th and 15th affirmative defenses (contributory negligence and product misuse) and is otherwise **DENIED**.

This the 12th day of August, 2021.

UNITED STATES DISTRICT JUDGE

Case 1:20-cv-00276-CCE-JLW Document 110 Filed 08/12/21 Page 9 of 9